Case in the morning called 208-1197, Gerald Flynn v. Marcy Calandra v. Joseph Calandra, co-administrator of the estate of David Calandra and the deceased. On behalf of the FAF1, Mr. Michael Raven. On behalf of the FAF League, Mr. Scott L. Howie. Mr. Raven. Thank you. May it please the court, Mr. Howie. My name is Mike Ragen, and together with George F. Garris, who is seated at the council table, I represent the plaintiff, Gerald Flynn. Although the task of every court in every case is to accomplish justice, it is a rarity when the legal standard on appeal is expressly stated to be whether the end of justice has been served. That's the situation here this morning. Although Loyola v. S&S Roof synthesized or identified four factors which guide the court's discussion in this area, the Supreme Court stated in the estate of Hoover and elsewhere that the overriding concern is whether justice and reasonableness has been accomplished. Justice is best served here by permitting plaintiff to amend his complaint to conform to the evidence and the proof which was in existence for two years prior to the trial court's ruling. Ray Zipser was a central feature of this case from the moment that Dr. Beatty's discovery deposition was taken, again, approximately two years before the trial court's ruling. If it came out two years before the trial court's ruling, why wasn't there some amendment prior to that time? I was absolutely certain, Your Honor, that one of you would ask that question at that particular point. And the answer is that in the context of this case, it was clear to everybody that this was going to be a Ray Zipser case. And counsel regarded it to be a routine motion, if you will, to clean up the pleadings to conform what was the proof at that point. And the evidence of that is that when you get to the evidence deposition of Dr. Beatty, there's only one expert for the defendant. When Dr. Beatty's evidence deposition was taken, there was only questioning related to Ray Zipser and not to the specific aspects of negligence other than to describe how the surgery takes place. So the best answer that I can offer the court at this point is that it was regarded as being almost a ministerial act at the time. When the actual motion was then made to amend, the trial court seemed to, I believe, just said he didn't really have any discretion to do that. And what does that bring to this table? Well, that brings to the table, and that's exactly what the trial court said in the beginning. And I have made clear the briefs that we have the utmost respect for the trial court. We appreciate the candor with which he spoke, but it gives us insight into his thinking. And what he said at the offset was a number of things that were, with respect, wrong. I mean, he first said that this isn't a Ray Zipser case, but then he corrected himself and said, yes, this is a classic Ray Zipser case. What his comment that you've inquired about brings to the table is that I suggest that the standard of review here is now de novo because he committed an error of law, which was that he was unsure, in fact, he was wrong, about what the scope of his discretion was. He said, I have no discretion once the evidence has gone in. And the evidence going in meaning that the evidence deposition has been taken, which is what he said. He says, once the evidence deposition has been taken, I have no discretion. And that's simply wrong. And his court well knows that if the trial judge applies a wrong legal standard, then in the eyes of the law, his discretion is regarded as having been frustrated and, therefore, no deference can be attached to his decision, which would otherwise be the case, it would be an abuse of discretion, because he didn't apply. And why is he specifically wrong when he said he didn't have any discretion because the evidence was in? Because he did have discretion. And I don't mean to be begging of a question, but he did. Discretion to do what? He had the discretion to consider the loyal factors, to consider the ultimate question of whether justice would be accomplished by allowing the amendment and, therefore, discretion to allow the amendment at that point. That's what he had the discretion to do. He was untroubled. And this court, I mean, you sort of sit most of the way up in the pyramid of legal administration in this state. And certainly the court has responsibility and concern about delay, et cetera, as does the trial judge in every case. But here, the trial judge has told us that he had no concern about the delay. This was a case that had been continued on three occasions for more than a year, all at the request of the defendant. And we don't quibble with the meritoriousness of his motions. But nonetheless, he had delayed the case, if you will, for more than a year. And the plaintiff had never asked for a continuance. And so the trial judge was also faced with a situation where the plaintiff didn't need a continuance. The evidence deposition that he had was sufficient. If the defendant wanted a continuance, then it should be granted. But this defendant, I mean, he continued to play out this string here, which was, you know, he didn't say, well, I don't want a continuance. And basically what he was saying is I want to be prejudiced. And we put in our first brief in this case here where that's not really his call to make in a way. But if the rule says, or the statute, section 616, says that the court can consider whether a continuance should be granted, and that's part of the amendment lexicon here. So there are some strong principles which apply here. And I'm going to ask, at the end, I'm going to ask, file a motion asking for leave to cite as additional authority a case I found yesterday that I gave to Mr. Howey this morning, which is this court's April opinion in Rush, in which many of these were set out. But 616 is written in broad general language. Courts are to exercise the greatest liberality in exercising their discretion to allow amendments. There is a strong public policy in favor of resolving disputes on the merits rather than on procedural grounds. And any doubt about whether to allow an amendment is to be resolved in favor of allowing an amendment. Now, this isn't just some general thing. If we find that there was no prejudice because the defendant was able to ask for a continuance and then redepose all the experts, I mean, aren't we basically saying that every motion to amend the pleadings or every petition should be granted? It must be granted because on the day of trial, you're Mr. Opponent to this motion. Your remedy is to simply redepose everybody, and where does it end? No, what's clear about the law in this area is that every case has to be decided on its unique facts. And the facts are really pretty stark and pretty clear here. If Loyola had not been in existence, this might be the poster child for allowing an amendment. There were only two experts, and Dr. Bainey had already been questioned by the defendant about res ipsa, but clearly he could have done it again. The defendant only had one expert, and that's the only person that he would have had to ask. And this isn't taking the case off into a new area. Now, there was a deliberate thing here, and again, with all due respect to defense counsel, the DuPage rule, as some of you know, is that you must file motions for summary judgment before 63 days, before the trial date. The defendant didn't do it here. There's one other thing he didn't do. When he was objecting to res ipsa questions at the evidence deposition, all that he said was, the defendant said, is we object on the basis of motions in limiting to be filed. Nothing else, nothing saying about this is res ipsa, you can't do it, because the plan was, we're not going to file the motions in limiting until the last moment. The plan was, we're not going to file a motion for summary judgment because absolutely that would have triggered the motion to amend. And defense counsel knew this, and I think the most emblematic sentence in this entire record is when the motion in limiting was granted and it really wasn't opposed at the trial. Then defense counsel said, then I move for directive verdict. Now, keep in mind, the jury wasn't even in the courthouse. Defense counsel knew that he would be embarrassed if he were to say, I move for summary judgment, because he should have done that 63 days before. So I move for directive. Did he have a basis for summary judgment? Pardon me? Did defense counsel have a basis to move for summary judgment before the motion was amended? I think that the motion for summary judgment would have said, A, the answer to your question is yes, I believe there was an article of motion for summary judgment at that point on the state of the pleadings. So the motion would have said, A, that the evidence as to the evidence depositions as to proof of specific negligence should be knocked out just as it was knocked out in the motion in limiting, and, B, there is no reason to plead in here and, therefore, we're entitled to summary judgment. Sixty-three days before trial, there would have been a motion to amend. I don't think there's any doubt that the motion would have been allowed at that point. And as we documented in the brief, this Court has said in Tri-G that on essentially the same timeframe, there's no doubt that leave to amend should have been granted. So the trial judge, and I think we've already covered a lot of this already, but he first denied leave to amend, saying he didn't have discretion, and he granted the summary judgment, but then they broke for the weekend. And when the Court came back, he said twice that summary judgment was denied, even though he had said before the weekend that it was to be granted. And then he continued the case. It was shown in the brief. They absolutely continued the case. He said twice, this case is continued until January. And the reason it's being continued to January is so the plaintiff could present the motion for leave to amend, and the Court would then say, I'll examine the factors at that point. And he said on that Tuesday, we go from Friday to Tuesday because of a holiday, that this was a classic case for resubstant. And that was in the morning. So in the morning, the plaintiff had won. But then the trial judge went to lunch. He came back. He said, I've talked with other judges. He said, I think the best way to do this is to enter the summary judgment, quote, rather than having jeopardy attached. Of course, that, you know, has no application in a civil case. I can't begin to imagine what was on the Court's mind at that point. But we go back to the principles, which are? What did he mean by that? I have no idea what he meant by that, Your Honor. I have thought about that question. I have no idea what he meant. I mean, and I am no criminal lawyer at all. I think in criminal law that once you put the first juror in the box, I think maybe that's when double jeopardy attaches. But I don't know. I don't know what it is. Well, jeopardy is a game where you ask questions. But you have to answer the question. Yeah, right. But the point is, is that jeopardy is not the same thing as former jeopardy. Maybe what he was thinking of was jeopardy relating to, as you said, witnesses sworn. However, it doesn't make any difference whether witnesses are sworn, if some are judgments granted, because it's still a ruling on the merits, which would result in either estoppel by judgment, collateral estoppel, or res judicata. So I personally don't quite understand what he meant. Maybe Mr. Howey can enlighten me if he has a better idea. So he says that this would prevent jeopardy from attaching. Yes. Yeah. He went to lunch, he came back, he said, I talked with other judges, and then he said the best way to handle this was to enter the sermon judgment rather than having jeopardy attached. And we have that in several places in the brief. I don't have the record site right here. And he says jeopardy attached and have no witnesses. Yes. He keeps referencing the witnesses. He did that the day before, or several days before, when he talked about the motion for directed verdict. He also talks about that. Right. And I just can't offer any opinion about that. Didn't he deny the motion for he being the trial judge, deny the motion for leave to file the amended pleading, and then either later that day or on the following day when the case was heard, say he was going to grant a continuous for some purpose to get some medical testimony for the plaintiff? Yes. But the motion had been denied, hadn't it? I mean, hadn't he said it was denied? He said it was denied. Right. But then when he came back and he said no, this was on, came back on Tuesday, Tuesday morning, he said, okay, this case is continued. And he says it several times. It's not I'm thinking about continuing it. He says it is continuing until January, November to January. That's the only delay we've been talking about here. And he says, it's very clear that the purpose of the continuance was to permit the plaintiff in orderly fashion to then present the motion for leave to amend, and the court said I will then apply the Loyola factors. Now, there was another conflated current here, which is what Your Honor is getting to, where he also talked about the doctor, Dr. Beatty, was in the Bahamas teaching, and so there's some question about whether he can come back. I think the state of the record is that he might not have needed him back in light of the evidence deposition containing all the elements of res ipsa. But that's what you're getting at. But there were two things. We're continuing it so that the motion for leave to amend can be granted, and also we're going to look into whether or not you can get your doctor here. And then after lunch, the world changed. He talked to other judges, and we're concerned about Jeopardy. Is prejudice the linchpin in this case? Prejudice is exactly. You're kind of conceding two and three, if I've got the numbers right. Not conceding necessarily, but three and four. Two is prejudice. Three and four, timeliness, previous opportunity to amend. You're kind of making an indication that maybe those factors may weigh against you, but the linchpin is prejudice. The linchpin is prejudice. This court has recognized that several times, and that's exactly, and I know my time is essentially up. That's the only thing I want to talk about here, was it is the most important court to say that over and over again. And we know the bounds of prejudice here. May I just finish, please? First of all, it does not mean that the opponent would win. My favorite thing that I learned out of writing this brief was a quote from the First District in Banks where the court said that the merit of the plea supplies the impetus for allowing the amendment. And so it is incompetent to say that I'm prejudiced because I'll lose if you allow the amendment. That's not prejudice. And secondly, prejudice is not delay, and we have that here. We have cases which develop that as well. The counsel for the defense is clear that, you know, I didn't plan to defend against a, I plan to, you know, defend against a surgery gone wrong case. And they won't tell me how it went wrong. So the prejudice is over. I mean, he's saying he's prejudiced now, but because now there's a continuance, he ought to be able to catch up. Yes, and the trial judge asked, and we have in the brief, the trial judge specifically asked the defendant, he said, look, what's your prejudice? And this was when the trial judge was still, was going to continue the case, was going to allow the hearing on the amendment. He said, what is your prejudice? And there was no answer to that question. And this is not a case of surprise. I'll be responsive to your question and then I'll shut up. This is not a case of surprise. I mean, clearly the defendant was pursuing the case in a way that the defendant had a right to pursue the case. But he knew what this was about. That's why he didn't say what his motions in limine were going to be. That's why he didn't file a motion for summary judgment. And so we come back at the end to where I started, which is, was justice served, and has Mr. Flint had an opportunity, had a really fair opportunity here, to have his case resolved in the merits rather than on this procedural problem. Okay. Thank you. Mr. Howie? Is it Howie or Hoey? It's Howie. Mr. Mayor, please, the Court. I think we can all agree on the general laudable principle that parties are entitled to have their cases resolved on the merits. But attendant to that principle is the notion of complete disclosure. It depends upon disclosure to resolve cases on the merits that the plaintiff give the defendant full notification, fully, fairly, completely, and timely of what he or she believes the merits of the case to be. Transforming a case from an ordinary medical negligence case into a race obsoloquer case on the very eve of trial doesn't serve that purpose. The depositions were taken considerably before the eve of trial. And weren't there questions, well, didn't the doctor raise, he said, I think you call it IPSA. Isn't that where everything started, and there were questions following that from maybe not you as trial counsel, but someone on behalf of the defendant as trial counsel? It appears that the expert may have had a little bit of rudimentary legal knowledge enough to know a little bit the name and the word IPSA and spoke that. But that, I call it a fleeting instance of broken Latin in our brief, that instance wasn't enough to disclose that the plaintiff's counsel would intend to bring that as the linchpin of his case. But were you able, and when I say you, I'm not talking about you, but whoever it might have been, trial counsel, was there an opportunity to question Dr. Beatty about that, you know, Latin phrase that he didn't know the whole thing about? The issue is not whether there was an opportunity. The issue is whether there was an impetus. There was never any, certainly there were opportunities to question Dr. Beatty about pretty much anything that might have popped into counsel's mind. The question, though, is given the structure of discovery, the way in which discovery was conducted based upon theories that had been placed before the defense, was there any reason to explore a subject that the plaintiff had chosen not to make part of the complaint? In fact, important to recognize as well that even after the word IPSA apparently resulted in what Mr. Reagan characterizes as a tacit understanding, that race-IPSA law was now the linchpin of the case, even after the word IPSA was spoken, the plaintiff didn't make any effort to transform his case earlier into a case that would have been based upon that legal doctrine. That is an important aspect of this appeal, because although the plaintiff contends that there was this implicit understanding among all the parties that this was now a race-IPSA case, and it had been for two years prior to trial, it's only the defense that he contends should have reached that conclusion implicitly. It is inconsistent with his argument to suggest, though, that the defense should have been preparing all along for a race-IPSA case, while at the same time the plaintiff chose for whatever reason not to make it a part of his complaint. And whether that was a deliberate trial strategy or an inadvertent oversight is really beside the point for what this Court is concerned with. Doesn't race-IPSA become even more apparent, and this may sound a little strange, but after the unfortunate death of the doctor? I mean, because now we don't have anybody who can actually say what was done, other than cursory personnel who were in the area. Well, again, that would be that it might have made it a more significant trial strategy. It might have been something that the plaintiff would have recognized the need to bring into the pleadings. But again, the impetus is on the plaintiff to disclose what he or she believes to be the basis of his case. It is not for the defense to anticipate all the ways in which the complaint might be altered as the trial approaches. It is the obligation of the plaintiff to disclose what he or she believes the case to be about. Do you agree with Mr. Reagan that the trial court judge said things like, I have no discretion once the evidence is in, et cetera? That's clear from the record. I can't dispute that. Well, isn't it an abuse of discretion to claim that one has no discretion? If that is the intent and purpose of what the statement says, then that would be an accurate statement of the law. But I don't think that in context, the judge's statement that he had no discretion can be taken squarely on its face. My point is that we could come up with several dispositions. One is we could affirm. Two, we could reverse and say it was an abuse of discretion. Three, we could vacate it and send it back and say the trial court never exercised its discretion in a way indicative of the fact that it understood what the parameters of its discretion were. I think it's clear, though, from the record that the trial judge did understand the parameters of his discretion. And Mr. Reagan is quite correct that the judge explored, let's say, the boundaries of that discretion in a number of different directions, granting certain motions, indicating that certain rulings would be made, and then taking them back. He gave a great deal of consideration and tested out a number of rulings along the way to eventually concluding that this was outside of his discretion. Why wouldn't he grant the amendment and then grant summary judgment on both counts, assuming that there's a count for regular medical malpractice and for racism? Well, first of all, there was no longer – had the amendment been granted, there would no longer have been a count for medical negligence. Okay. There would have been one count for racism? That's correct. The racism count would have replaced the medical negligence count. It was a wholesale transformation, not just an addition. The trial court denied the amendment, entered summary judgment on the first original count, as opposed to possibly exercising its discretion in allowing the amendment to race itself, and then ruling on the merits of that particular allegation or count. Correct? That's correct. And we maintain that even had he granted the amendment – this is a secondary argument, obviously – but even had he granted that amendment, the amended complaint would also have been subject to a summary judgment motion, albeit on obviously different counts, on different grounds. This sounds a little bit like heads I win, tails you lose. I'm not – can you explain to me how the trial court exercised its discretion in such a way that the only conclusion could have been a summary judgment? If the exercise of discretion called for the denial of the motion to amend, and given the factors that the Supreme Court set forth in the Loyola decision, I think it's clear that it does not satisfy those factors. That led the court to enter a summary judgment on the complaint that was still before it. The plaintiff attempted to put before the court a different complaint, a different complaint that presumably the plaintiff hoped would pass muster with the court, would convince a jury, and would result in a judgment in his favor. But that complaint did not satisfy the procedural requisites that the Supreme Court set forth in Loyola. Then it sounds as if the exercise of discretion that the court made relative to whether or not it was going to allow an amended pleading to be filed, if that was defective, then his summary judgment was defective as well because it was effectively built on a foundation of sand. On a foundation of sand? No house can stand on a foundation of sand? No, the foundation of the plaintiff's case was either the medical negligence complaint, which he was attempting to disavow at the time the case came to trial, or it was the Ray Six account, which he presumably felt he needed to use to transform the case to something else where he felt he could prevail. Now, it's our contention that he couldn't have prevailed on either complaint. And that had the case, had the amendment been allowed, which we believe would have been an abuse of discretion, but had it been allowed, then an alternate strategy would have been to move for a summary judgment on that complaint, or alternatively, perhaps, to try the case on that complaint and prevail. But the fact that the plaintiff placed himself in a position where he was no longer able to prevail is not a function of an abuse of any discretion. It's a function of either the strength of the plaintiff's case or the procedural missteps that the plaintiff made, the plaintiff's trial counsel made as the case approached trial. During Mr. Reagan's argument, I made a quip about jeopardy and made a reference to you and asked if you might be willing to give a response or rationalization for what the trial court meant when it was talking about jeopardy attaching or whatever. Well, the trial judge wasn't clear about what he meant by the word jeopardy, and clearly the concept of jeopardy is not appropriate to a single case. So you don't wish to venture a conjecture or a rationale? Anything I could offer would be nothing more than that, Your Honor. But it is clear from the context that the judge felt it was proper to dispose of the case at the time. He had clearly reached a different conclusion than he had before, but there's nothing inherently wrong with that. There is a certain narrow degree of discretion allowed in both of the major issues before this Court, both the question of whether the amendment was properly offered and the question of whether a continuance was necessary under the circumstances. If no rational mind could explain what was done or did, then how can anyone say that no rational mind would disagree or agree with it? We have somewhat of a conundrum, it seems, or an enigma. We're asked to make a ruling on something that nobody seems to understand what transpired. I think we're very clear, Your Honor, on what transpired. We may not know what the judge meant when he used the word jeopardy. He may have misspoken. But the concept of what he did is quite clear. He chose, after some trial and error, if you will, he chose eventually to exercise his discretion in the direction of finding that the amended complaint could not be timely offered, that it would prejudice the defense, that it would not satisfy the four factors that the Supreme Court set forth in Loyola. And he did not allow the amendment on that basis. And even though the plaintiff suggested that a continuance would have cleared all this up and would have rendered the complaint no longer prejudicial, he declined to exercise his discretion to grant that continuance. And again, he had only a narrow discretion to do even that based upon Supreme Court Rule 231F, which specifically says that you need a compelling reason, once trial has been reached, to continue a case. How did the case, the initial, continue to January? Your client didn't ask for it, right? No. And I don't think the plaintiff asked for it on the occasion that it was granted. I believe the plaintiff was in favor of doing it. I don't recall who asked for it. My point is I don't think anybody asked the trial judge for a continuance on the occasion that he granted it, did they? That may be. It may have been the judge's own suggestion. But he didn't want to grant four or five days earlier, essentially. He changed his mind. He was initially inclined to grant it and acknowledged, changed his mind, and decided correctly, can we maintain, that he did not have sufficient discretion to do that. And Supreme Court Rule 231F supports that exercise. It specifically says that one needs an especially compelling reason. Once the trial has been reached. So if the judge indicated that he didn't have discretion, he may have been saying that he did not have sufficient discretion. And it's quite clear from the rule that he does, whatever discretion he has, narrows considerably at the time the case comes to trial. There is certainly no case law that suggests that the plaintiff's failure to earlier amend a complaint, consistent with all the factors, is a sufficiently compelling or sufficiently brave reason to award a continuance, to grant a continuance once the case has been called for trial. What was your client's prejudice, if we're going to consider the factors here? My client prepared for a trial counsel, prepared for a case based upon medical negligence. It is a principle almost, almost eluding case authority, because it's such a self-evident proposition, that race-hypsologer is a considerably different theory of recovery, if you will, than medical negligence is. It calls for different evidence. It calls for different sorts of witnesses. It calls for different things to be said. It calls for an entirely different sort of preparation than a medical negligence case would call for. The parties were ready at the time of trial to try this case on medical negligence. The defense was completely prepared for that. To have that case transformed at that moment, at the time the case was called for trial, to have it transformed into a fundamentally different cause of action was deeply prejudicial to the defense. And the cases are several, which suggests that changing the case in a way that calls for a substantially different evidence in defense is the sort of prejudice that Loyola has in mind when it speaks of not allowing an amendment that would prejudice the defense. The cases that we've cited include the Arroyo case, the Hartzell case. Those are both cases that talk about the need to or talk about the importance of the change in evidence that is required to defend oneself as a basis for denying an amendment, especially as this trial is being called. And the cases of Mueller, Mueller v. Farmore is one, and Golden v. Kishwaukee Medical Center, both are cases dealing with race-hypsoloquer. And both are cases where the First District held that adding a race-hypsoloquer count at the time of trial was substantially prejudicial and should not have been allowed. And those were cases where the plaintiffs chose to add a race-hyp- May I take a moment to clear the thought? Chose to add the race-hypsoloquer count to an existing complaint, rather than to swap out the previous cause of action for an entirely new complaint that would have replaced it. In fact, the Golden case is not just race-hypsoloquer, but it's race-hypsoloquer in the context of medical negligence. And that case squarely held that the trial court was correct to deny the amendment. It was well within its discretion because of the prejudice that it would have worked upon the defense. By not, say, bringing the motion for summary judgment according to DuPage County rules prior to the 63 days and not bringing the motion in limine, the motions that ultimately I think everybody could have figured out were going to come, didn't you put yourself in a position where you could say, ah, I'm prejudiced, and then should we give you that opportunity? Well, the motions in limine were directed toward the initial complaint, and they were based upon Dr. Beatty, the expert witness who disavowed one of his disclosed opinions and acknowledged that all of his other disclosed opinions were second. The trial counsel and plaintiff or defendant knew that long before the day the trial was going to start. But they weren't actually stricken by means of the motion in limine until the trial was called. And there's nothing at all unusual or out of the ordinary, certainly nothing untoward, about filing a motion in limine at the time of the trial. It is the trial judge who rules on that in the context of the trial. But if it's going to lead, as you suspected it would, to that ruling that threw out that evidence, I mean, it seems like that might be the only kind of clear ruling that we have here that doesn't have a lot of cloud about it. Why wasn't it brought earlier? Well, it might have been had the plaintiff disclosed the res ipsa loquitur count. But there was no indication at that time that res ipsa loquitur would become a part of this case. There were some hints in the deposition testimony that the expert thought perhaps it was part of the claim, but the plaintiff's trial counsel didn't think it was part of the claim and never brought it into the complaint. So to suggest that the motions in limine were withheld out of some tactical consideration is to overlook the fact that the defense believed this to be a medical negligence case. And properly brought motions in limine that were based upon the medical negligence case at the time that that case came to trial. There's nothing at all unusual about that. The only thing that would make that unusual would be if the plaintiff had brought his res ipsa loquitur complaint to the attention of the defendants or the court at some time substantially prior to trial or even earlier in relation to trial than the day of trial. That might have raised some procedural eyebrows, if you will, about what was going on. But the defense, I think, instead, the fact that those motions in limine were brought at the time of trial is entirely consistent with the fact that the defense was preparing for a trial based upon a theory of medical negligence and not, for one, based upon res ipsa loquitur. Tacit understandings are no substitute for disclosure, for full, fair, and complete disclosure of what the plaintiff believes the merits of the case to be. The idea that a continuance might have been appropriate would be an exception that would swallow the rule. It would, as Justice Burke observed, make any motion for amendment to the complaint at the time of trial necessarily one that must be granted. And that's inconsistent with the Loyola case. This was a case prepared for trial on the basis of medical negligence. To transform it so fundamentally into such a fundamentally different case, something that would have called for such a fundamentally different defense, would not have served the purposes of the court. It would have been prejudicial to the defense and would have been antithetical to the notion that cases should be resolved on their merits. The comments of the court, really, I'm struggling to find where is the court exercising its discretion in denying the motion to file the amended pleading. You have the first day, he says the plaintiff's put in all the medical evidence and for that reason I'm not going to allow it. Maybe that could go to the prejudice and it could go to the timeliness and all that. But it seems to remove any doubt in the follow-up on the next Tuesday where the court says, I'm looking at those three factors, two and three of Loyola, I don't have discretion. And based upon the fact that the plaintiff's completed his medical evidence, then Ray Simpson cannot be filed. Where can you point to in the record that shows that this court is actually exercising its discretion? Well, first, I think when the court says I don't have the discretion, I think it's inappropriate to read that. That's incorrect to read that in a way as to suggest that the trial judge thought he had no discretion at all. I think that the discretion narrows considerably once the case comes to trial and that may have been what the judge was reflecting when he stated he didn't have the discretion. He didn't say he had no discretion whatsoever. He may have been indicating that his discretion did not permit him to do that. And I think given that this is a statement, an oral spoken statement, we might be inappropriate to parse it so finely as to say that he was denying the existence of any discretion at all. And I think the notion that he was exercising that discretion is something that is throughout the transcript of both hearings. The court clearly went back and forth. If Mr. Reagan characterizes that as vacillating or indecision, I think it's an example of discretion. It's an example of making one ruling and then choosing to rule in a different way or indicating that the ruling might go a certain way and then changing his mind. It's been said that one sign of intelligence is the ability to change one's mind. And I submit that this court should affirm the exercise of discretion because it is supported by the case law. It is supported by the four Loyola factors in terms of amending the complaint. It is supported by Supreme Court Rule 231F in terms of denying the continuance. Both those rulings were well within the circuit court's discretion and the summary judgment in favor of the defendant should be affirmed. Thank you. Thank you. Mr. Reagan. Thank you. I will be proverbially brief. Justice Burke, there is no doubt in terms of what the record says about this. The court says, I have no discretion. And again, I'm appreciative of the court, of the trial judge, having been so forthcoming in what was on his mind. But I think he even says in there that the appellate court's going to think I'm crazy talking to myself. And again, I don't want to put any undue color on that, but nonetheless. And then he said, and this is page 13 of our brief, he said, George, if you find a case that says the complaint can be amended after the medical evidence is in, then you can research and make a comment. And that was sort of his benediction to the parties as they left for the weekend. The record is very clear, he thought he had no discretion. Justice Hutchinson, I agree with you completely that nobody asked for the continuance when it was first granted. It was the judge's own solution, and it was a very appropriate solution. So let's continue this case to January. And then he went on to say, at least twice, this case is continued. Not that I'm thinking about it or anything else. But nobody asked for it. That's a complete understanding of the record. There were far more than hints in the deposition about racism in both depositions. All the elements were there. We put them in many places. The most succinct place you can find it is page 8 and 9 of our main brief. Trial counsel, the defendant, knew what was going on. The question was asked by plaintiff's counsel to the doctor, do you have an opinion, based on a reasonable degree of medical and surgical certainty, as to whether or not, in the normal course of events, an injury to the femoral nerve would occur during the kind of procedure performed, in the absence of any negligence. And the defense was, again, I state my objections regarding motions and limiting to be ruled upon, and the scope to be defined at the time of trial. And there was nothing like, hey, wait a minute, relevance. This is not a res ipsa case. It was none of that. This was sitting there. The cases that Mr. Howie talked about, where he says that the courts say that you can't file res ipsa at the last moment, those cases are very different. The two we talked about primarily were Mueller and Farmer. Are you suggesting that the testimony or the deposition that you just read satisfies the elements of res ipsa law? No, absolutely not. It's the beginning of it. You don't want me to read the remaining pages, but it's all of the elements that are set out here, including what we know to be true under the law. Well, Mr. Howie said that there are different forms of evidence presented in a res ipsa account than there is in a simple malpractice. And I know that to be true. He didn't enunciate them. And, frankly, I don't think I could enunciate them without doing some research. So what I'd like you to clarify is what evidence was presented to the judge that he said that he didn't need any more evidence about that did or didn't cover the elements for res ipsa. And I will answer the question directly. I will also say that we are dealing here with a plea rather than proof. This is not a motion of summary judgment. It's a motion to leave to amend. The answer to the court's question, and I haven't put together all of the pages of the brief, but the very next question was the answer was there had to be a deviation from the standard of care that you just described, a question, and as part of the basis of your opinion, is a complication of nerve injury in Dr. Piccioni's testimony, one of the defendant's experts, that the complication rate was 1 percent. And that's the evidence here is that this injury occurs, this complication, in either 1 percent or 5 percent. Those are the two numbers in the record of the cases. I mean, it's not something that happens a lot. It's 1 or 5 percent. Do you have an opinion based upon a reasonable degree of medical and surgical certainty that in the normal course of events or the usual course of events, the femoral nerve injury would not occur in the absence of negligence? Correct. Absolutely it wouldn't. There was even a question asked about whether the patient was under the management and control of the physician at the time of the injury. Yes. And so I think between our reply brief and the main brief, all of the basics have been touched. The two cases he talked about, we talked about more than two, his two primary cases which he says the court says you can't bring in res ipsa at the last moment, they're factually different. First of all, in both of those cases, elements of res ipsa were clearly missing, and so that was part of the court's decision, look, this isn't going to fix anything anyway. Secondly, in the Golden case, the appellate court on its own, this was not part of the trial court's thinking, but the appellate court on its own said, look, we need effective administrative justice here. That case had proceeded for nine years at that point. This is a case where the proposed amendment would conform the pleading to the proof that was before the court at the time. The case is not perfect on either side. It's part of what makes the business of judging judgmental, and I believe that the justice would best be served by allowing the amendment. If we find that the trial court did not exercise its discretion, what do we do? Do we remand to the trial court for the court to exercise its discretion, or do we apply the Loyola factors ourselves? Justice McClaren outlined some of the options. Of course, throwing myself upon the mercy of the court, we're 366, so you can do whatever you want. Based on your research, what's your opinion? I believe that the most jurisprudentially economical route here would be to remand the case to the court with the direction that the amendment be allowed and for further proceedings. Because then you would want us, if we did that, we would have to do a Loyola analysis ourselves. Yes, yes, and I would ask that the court do that. Alternatively, you could remand it for the trial court to do that, but I believe the facts are all displayed here, and I would ask that you permit the amendment here. Thank you.